Ronald Richards, Esq. (SBN 176246)
THE LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, A.P.C.
P. O. Box 11480
Beverly Hills, California 90213
Telephone (310) 556-1001
Facsimile (310) 277-3325
Email: ron@ronaldrichards.com

Attorneys for Defendant
GALEB MIZYED

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> GALEB MIZYED, et al., <br><br> Defendants. | Case No.: **CV 10-06115-R** **(CR 03-398-R)** <br><br> **REPLY MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS MOTION TO REDUCE SENTENCE PURSUANT TO 28 U.S.C.A. § 2255; REQUEST FOR ORAL ARGUMENT AND AN EVIDENTIARY HEARING IF NECESSARY** |

GALEB MIZYED hereby submits his reply brief. He is requesting the Court calendar the matter and set it for oral argument as the issues are not boilerplate. If the Court believes that it would benefit from oral argument, then Mr. Mizyed is requesting it. Mr. Mizyed is also requesting an evidentiary hearing if necessary.

///

///

///

# TABLE OF CONTENTS

**PAGE**

*Table of Authorities*…………………………………………………………*ii-iii*

I.  SUMMARY OF ARGUMENT.............................................................................1

II.  LEGAL STANDARD FOR 28 U.S.C. § 2255 MOTIONS ................................2

III.  THE "TELL ALL" PROVISION – SUBDIVISION (5) OF 18 U.S.C. § 3553(F) AND UNITED STATES SENTENCING COMM'N GUIDELINES § 5C1.2...................................................................................3

IV.  STANDARD OF REVIEW ...............................................................................3

ARGUMENT

V.  THE DISTRICT COURT'S FINDING THAT MOVANT WAS NOT ELIGIBLE FOR THE DOWNWARD DEPARTURE WAS CLEARLY ERRONEOUS BECAUSE THE DEFENDANT NEED ONLY PROVIDE INFORMATION "TO THE GOVERNMENT", AND NOT TO ANYONE ELSE. ............................................................................4

VI.  THE COURT SHOULD REDUCE MOVANT'S SENTENCE TO FIFTY ONE (51) MONTHS BECAUSE HE HAS NOW MET ALL THE SAFETY-VALVE ELIGIBILITY REQUIREMENTS. .....................................9

VII.  MOVANT WAS RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL AT THE SENTENCING LEVEL..................................................13

VIII.  MOVANT WAS RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL AT THE APPEAL LEVEL WHEN COUNSEL FAILED TO RAISE THE FOREGOING STATUTORY ISSUE PRESENTED..................15

IX.  CONCLUSION ..................................................................................................16

- i -

# TABLE OF AUTHORITIES

PAGE

## NINTH CIRCUIT CASES

*United States v. Ajugwo*, 82 F.3d 925, 929 (9th Cir.1996) ............................................3

*United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir.2006) ...............................4

*U.S. v. Ferryman*, 444 F.3d 1183, 1185-86 (9th Cir.2006) ...........................................4

*United States v. Real-Hernandez*, 90 F.3d 356, 360 (9th Cir.1996) ........................4, 7

*United States v. Shrestha*, 86 F.3d 935 (9th Cir. 1996)...........................................4, 5, 7

*United States v. Thompson*, 81 F.3d 877, 879 (9th Cir.1996) ......................................5

*US v. Jackson*, 356 Fed.Appx. 4, 2009 WL 3389557 (C.A.9 (Cal.) .............................9

## SISTER CIRCUIT CASES

*Bachner v. United States*, 517 F. 2d 589, 591 (7th Cir., 1995.) ....................................2

*U.S. v. Garcia*, 954 F.2d 12, 19 (1st Cir. 1992)...........................................................13

*U.S. v. Valencia-Lucena*, 925 F.2d 506, 515 (1st Cir. 1991) ......................................13

*United States v. Acosta-Olivas*, 71 F.3d 375, 378-79 (10th Cir. 1995)..............3, 4, 5, 7

*United States v. Alvarado*, 326 F.3d 857, 862 (7th Cir.2003)....................................5

*United States v. Jeffers* 329 F.3d 94, 99 (2d Cir. 2003) ............................................12

*United States v. Myers*, 106 F.3d 936, 940 (10th Cir. 1997 ........................................4

*United States v. Rodriguez*, 69 F.3d 136, 143 (7th Cir.1995) ..................................5, 7

*United States v. Rodriguez*, 69 F.3d 136, 144 (7th Cir.1995) ......................................3

*US v. Bendolph*, 409 F. 3d 155, 177 (3rd. Cir) (2005) ...................................................8

## UNITED STATES SUPREME COURT CASES

*Bowen v. Johnston*, 306 U.S. 19, 26, 59 S.Ct. 442, 83 L.Ed. 455 (1939.....................16

*Davis v. United States* 417 U.S. 333, 342-47, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109

   (1974...............................................................................................................2, 8

- ii -

# STATUTES

18 U.S.C. § 3553(f)(5) ................................................................................*passim*

18 U.S.C. 3553(f) ........................................................................................*passim*

28 U.S.C. 2255 ............................................................................................*passim*

# LEGISLATIVE HISTORY

H.R.Rep. No. 103-460, at 5 (1994)..............................................................7

H.R.Rep. No. 460, 103d Cong., 2d Sess. 5 (1994) ......................................3

# OTHER AUTHORITIES

Erwin Chemerinsky, *Thinking About Habeas Corpus*, 37 CASE W. RES. L. REV. 748,

749 (1987) ...........................................................................................8

United States Sentencing Comm'n Guidelines Manual (U.S.S.G.) § 5C1.2(5) ....*passim*

U.S.S.G. § 6A1.3(a) ...................................................................................13

U.S.S.G. § 5C1.2.........................................................................................*passim*

<u>**REPLY MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS**</u>

<u>**MOTION TO REDUCE SENTENCE PURSUANT TO 28 U.S.C.A. § 2255**</u>

Defendant/Movant GALEB MIZYED ("Movant"), a person in federal custody within Federal Correctional Institution Sandstone facility in Minnesota, respectfully submits the following reply points and authorities in support of an order correcting and/or vacating his 168 month sentence of February 5, 2007 to 51 months.

## I.    SUMMARY OF ARGUMENT

Relief should be granted under 28 U.S.C. § 2255 for the following separate and independent reasons:

1. The denial of the safety valve sentence reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 based solely upon information that was not tendered "to the government" was clear error.[1]  That is, the denial of the downward departure should strike this Court "as [a] wrong with the force of a five-week old, unrefrigerated dead fish."[2]

2. The denial of the safety valve sentence reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 based solely upon information that was not tendered "to the government" was error under the microscope of statutory de novo review.

3. The reversal of co-defendant Jackson's conviction on appeal shows that the district court clearly erred when denying  Movant's mandatory safety valve relief pursuant to 18 U.S.C § 3553 (f)

4. Movant was rendered ineffective assistance of counsel at the sentencing hearing when no request for an evidentiary hearing was made.

---

[1] Here, at sentencing, the government urged that Movant not receive a safety valve sentencing decrease because he had not satisfied the fifth criterion as set forth in 18 U.S.C. § 3553 (f), in that Movant had not testified truthfully on direct examination by co-defendant Jackson's attorney at Jackson's trial. (RT 2/5/07: 106; 9 ER 101).

[2] As the Seventh Circuit has noted in language particularly appropriate to this case, "[t]o be clearly erroneous, a decision must ... strike us as wrong with the force of a five-week old, unrefrigerated dead fish."  *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir.1988).

5. Movant was rendered ineffective assistance of counsel at the appellate level when counsel failed to raise the issues presented above in numbers "1" and "2".

## II.   LEGAL STANDARD FOR 28 U.S.C. § 2255 MOTIONS

Under 28 U.S.C. 2255, a federal prisoner may file a motion to correct a federal sentence without resorting to a habeas petition. In the motion, the prisoner may claim that his or her sentence (1) violates the U.S. Constitution or laws, (2) was imposed by a court that lacked jurisdiction, (3) exceeds the maximum allowed under the law, or (4) "*is otherwise subject to collateral attack*." A federal court may grant relief by vacating and setting aside the judgment, granting a new trial, and resentencing or even releasing the prisoner. Here, Movant contends his sentence is "otherwise subject to collateral attack." The meaning of this phrase, however, leaves much to be desired.

Until the Supreme Court decided *Davis v. United States* 417 U.S. 333, 342-47, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974) (*Davis*)), the scope of review under section 2255 was uncertain. *Bachner v. United States*, 517 F. 2d 589, 591 (7th Cir., 1995.)

As explained in *Davis*, 28 U.S.C. § 2255 relief is provided where, *inter alia*, it is alleged that the claimed error is "a fundamental defect which inherently results in a complete miscarriage of justice" <u>or</u> where "*exceptional circumstances*" warrant allowing a collateral challenge. *Davis, supra,* 417 U.S. 333, 342-47, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 [appropriate inquiry is whether the claimed error "present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."] (*emphasis added*.) However, the meaning of the term "exceptional circumstances" also leaves some ambiguity. A case by case approach is therefore required. Movant respectfully requests the Court take a sharp eye to the exceptional circumstances of this particular case.

- 2 -

### III.   THE "TELL ALL" PROVISION – SUBDIVISION (5) OF 18 U.S.C. § 3553(f) AND UNITED STATES SENTENCING COMM'N GUIDELINES § 5C1.2.

At issue in the present case is only subsection 5 of 18 U.S.C. 3553(f) and U.S.S.G. § 5C1.2.[3]  Section 5C1.2 provides "the court shall impose a sentence . . . without regard to any statutory minimum sentence, if the court finds" at sentencing that the defendant has met each of five specific criteria set out in subsections (1) through (5). U.S.S.G. § 5C1.2; 18 U.S.C. § 3553(f).

Here, the Government and Movant agree that Movant met the first four relatively objective criteria in section 5C1.2.  The disagreement arises with regard to his compliance with subsection 5, which requires a defendant to "truthfully tell all he knows to the Government."  *United States v. Acosta-Olivas*, 71 F.3d 375, 378-79 (10th Cir. 1995) (*Acosta-Olivas*).

Congress enacted the "safety valve" provision in 1994 to allow less culpable defendants who fully assist the Government to avoid application of the statutory mandatory minimum sentences.  As the legislative history of the section states, without such a safety valve, for "the very offenders who most warrant proportionally lower sentences . . . mandatory minimums generally operate to block the sentence from reflecting mitigating factors."  H.R.Rep. No. 460, 103d Cong., 2d Sess. 5 (1994).

### IV.   STANDARD OF REVIEW

The district court's determination of eligibility for the reduction permitted by § 5C1.2 is reviewed for clear error.  *United States v. Ajugwo*, 82 F.3d 925, 929 (9th Cir.1996);*accord United States v. Rodriguez*, 69 F.3d 136, 144 (7th Cir.1995) (*Rodriguez*); *see Acosta-Olivas*, (10th Cir. 1995) 71 F.3d at 378 n. 3.  However, although the court must "review for clear error the district court's factual determination that a particular defendant is eligible for relief" under the safety valve,

---

[3]  The language of § 3553(f) has been adopted verbatim in the United States Sentencing Comm'n Guidelines Manual at § 5C1.2.

*United States v. Real-Hernandez*, 90 F.3d 356, 360 (9th Cir.1996), the court must also review de novo the district court's statutory interpretation of § 3553(f) subd. (5). *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir.2006) (holding "we continue to review the district court's interpretation of the Sentencing Guidelines de novo."; *see also U.S. v. Ferryman*, 444 F.3d 1183, 1185-86 (9th Cir.2006) (reviewing determination of safety valve eligibility for clear error but independently interpreting "[t]he phrase `in connection with'" as a question of law).

Therefore, to the extent the following analysis calls upon this Court to interpret the statutory meaning of § 3553(f) subd. (5)'s phrase "to the Government", the proper standard of review is de novo.  Under either standard, however, relief is warranted for the following reasons.

## ARGUMENT

**V.    THE DISTRICT COURT'S FINDING THAT MOVANT WAS NOT ELIGIBLE FOR THE DOWNWARD DEPARTURE WAS CLEARLY ERRONEOUS BECAUSE THE DEFENDANT NEED ONLY PROVIDE INFORMATION "TO THE GOVERNMENT", AND NOT TO ANYONE ELSE.[4]**

The fifth requirement for safety-valve eligibility is very broad, requiring disclosure of everything that the defendant knows about his or her actions, and about the actions of those who participated in the crime with the defendant.  *Acosta-Olivas*, 71 F.3d at 378-79 (10th Cir. 1995).  Disclosure is required "whether or not it is relevant or useful to the government's investigation."  *United States v. Myers*, 106 F.3d 936, 940 (10th Cir. 1997) (quoting *United States v. Shrestha*, 86 F.3d 935 (9th Cir. 1996) (*Shrestha*)).

The broad safety valve provision demands "all information" that the defendant has concerning the offense.  This plainly broad language suggests that "any and all

---

[4] This section is briefed per the parties stipulation.

information that the defendant possesses concerning the offense must be provided *to the Government*." *United States v. Thompson*, 81 F.3d 877, 879 (9th Cir.1996) (finding that defendant was required to reveal all the information he had regarding the offense, including the name of his source) (*emphasis added*); *see also United States v. Alvarado*, 326 F.3d 857, 862 (7th Cir.2003) (affirming district court's denial of safety valve where defendant admitted that he had received a shipment of drugs from his sister but had not disclosed his sister's contact information); *Rodriguez*, 69 F.3d at 143 (7th Cir.1995) (affirming denial of safety valve where defendant had "produced no information concerning the offense, including the identities of drug suppliers or buyers").

Plainly put, the fifth requirement of section 3553(f) requires disclosure of "everything [defendant] knows about his own actions and those of his co-conspirators." *Acosta-Olivas*, 71 F.3d at 378. Accordingly, section (5) of the safety valve provision has been termed a "tell all you can tell" requirement. *Id*. at 379; *accord Shrestha*, 86 F.3d at 939 (9th Cir. 1996)

However, despite the statute's exceedingly broad reach, the fifth requirement of section 3553(f) does not require the disclosure of anything, to anyone, except "to the Government." <u>This novel point is most critical here</u>. Specifically, 18 U.S.C. § 3553(f) subdivision 5 provides:

> "(5) not later than the time of the sentencing hearing, the defendant has truthfully provided *to the Government* all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement."

18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 (*emphasis added*).  Here, the relevant portion of the statute are the words "to the Government".  In this case, Movant was sentenced to 168 months instead of 51 months because of answers he gave to Jackson's lawyer on direct examination as a witness in Jackson's case.  The answers were not given "to the Government."  18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2.

In fact, on cross examination by the Government (after the alleged false information was provided to Jackson's attorney and to the Court), Movant testified that he believed Jackson knew she was doing something wrong. (ER 338.)[5]  As a result, the Government was able to secure Jackson's conviction on the basis of Movant's cross-examination testimony. (ER 96.)  Further, the Ninth Circuit court of appeal paid particularly close attention to Jackson's testimony provided "to the Government" in affirming Jackson conviction for money laundering.[6]  Thus, the Government was able to secure a conviction and withstand a challenge on appeal based upon Movant's testimony provided "to the Government".  It is no secret that the Government did not like Movant's direct testimony to Jackson's attorney under subpoena, but they did not have standing to object to it and use it as the basis to deny Movant the benefit of the safety valve relief at sentencing.  Holding otherwise would effectively give the Government the power to use anything any defendant says to anyone as grounds to avoid the mandatory downward departure – so long as the Government feels it was not truthful.  The statute does not permit such unbridled power.  The Government is entitled to all the information under the sun per 18 U.S.C.

---

[5] "ER" refers to Appellant's Excerpt of Record filed contemporaneously with his opening brief on appeal.

[6] *U.S. v. Jackson*, 356 Fed.Appx. 4, 2009 WL 3389557 (C.A.9 (Cal.)  (holding "Jackson's sufficiency challenge [to money laundering] fails given testimony by Wallace, Sarabia, and Mizyed that she knew the money received from Mizyed involved the proceeds of unlawful activity, and that the money he gave her to obtain money orders and pay his bills was an attempt to conceal the source of those funds.")

§ 3553(f) subdivision 5 – but their entitlement reaches only to information provided to "the Government". 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2.

In sum, the answers given in response to questions posed by Jackson's attorney were not provided "to the Government". Therefore, even if Movant's testimony was not truthful, this testimony should not have been used to deny the application of the safety valve reduction. A textual statutory reading, and every case which had ever undertaken a statutory analysis of 18 U.S.C. § 3553(f), requires a conclusion that the district court's finding that Movant was not eligible for a safety valve adjustment under USSG § 5C1.2 was "clear error." *Real-Hernandez*, 90 F.3d at 360 (9th Cir. 1996). That is, the district court's denial of the safety valve was clearly erroneous when compared to the face of the statute. Further, de novo review reaches the same conclusion.

The Courts have never required Defendants to be truthful and "tell all they can tell" to anyone else but "to the government." The courts have interpreted the safety valve under USSG § 5C1.2 to require a defendant to reveal a broad scope of information, even beyond the offense of conviction[7] and even beyond there own involvement[8] - - *but never to anyone but the Government*.

Congress passed the statute in order to "ensure an actual sentence reduction for those convicted of offenses covered by the legislation." H.R.Rep. No. 103-460, at 5

---

[7] *See US v. Miller*, 151 F. 3d 957, 961 (9th Cir. 1998.)

[8] To qualify for safety valve relief, the defendant "must provide, prior to sentencing, all information at his disposal which is relevant to the offense, whether or not it is relevant or useful to the government's investigation." *United States v. Shrestha*, 86 F.3d 935, 939 (9th Cir. 1996) (citing *United States v. Acosta-livas*, 71 F.3d 375, 378 (10th Cir. 1995)). The statute requires the defendant to disclose any details he possesses about the drug offense of conviction, including the source of the drugs and other parties involved in the transaction. Id.; see, e.g., *United States v. Rodriguez*, 69 F.3d 136, 143 (7th Cir. 1995).

- 7 -

(1994).  The Government's recommendation that Movant, an offender covered by the legislation, be deprived the sentence reduction was contrary to Congressional intent.

Therefore, Movant respectfully submits that this Court must either find "clear error" or it must make new law.  Movant respectfully requests that the Court take the former approach.  To do this, would be to cure an injustice which has managed to survive beyond trial and appeal.  To do this would be to effectuate the very purpose behind 28 U.S.C. 2255.  *Davis, supra*, 417 U.S. 333, 342-47 [the appropriate inquiry is whether the flaw "present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."]  To do this, would set Movant free from bars he is currently behind only because the Government thought information he provided to someone else hurt their case against Jackson.[9]  To do this, would serve the ends of justice.

The underlying purpose of 28 U.S.C. 2255 is to remove the possibility of the survival of an injustice beyond trial and appeal.  That purpose shall be served in the instant case if relief is granted.  This Movant implores this Court to cure the injustice which has managed to survive beyond appeal in this case.  Searching for meritorious petitions is not only this Court's duty, it is one of its most important.  This Movant is "not alone in believing that the writ of habeas corpus may be the single most significant protection of individual rights in the Constitution."  *US v. Bendolph*, 409 F. 3d 155, 177 (3rd. Cir) (2005) (citing Erwin Chemerinsky, *Thinking About Habeas Corpus*, 37 Case W. Res. L. Rev. 748, 749 (1987).)

Here, the flaw was not a mere trial error relating to the finding of guilt, but a rare and unusual error which amounted to "exceptional circumstances" embraced in Sec. 2255's words "collateral attack."  These rare and unprecedented conditions - -

---

[9] The government's responsive brief on appeal in Movant's case stated that "defendant's direct testimony negated specific elements of Jackson's crime." (at p. 15.)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS MOTION TO REDUCE SENTENCE PURSUANT TO 28 U.S.C.A. § 2255**

well termed 'exceptional circumstances' - - are embraced in 2255's words 'collateral attack'.  These facts must come within that definition of the phrase.  Accordingly, Movant respectfully requests the Court carefully consider the novel issue presented herein.

Unless Movant can avail himself of 2255 relief, he will be serving a sentence that will span nearly another decade.  If the Court finds merit in the foregoing, he should be released forthwith because he has already served a sentence which would have been imposed had he received the benefit of the "safety valve" provisions of 18 U.S.C. § 3553.

### VI.   THE COURT SHOULD REDUCE MOVANT'S SENTENCE TO FIFTY ONE (51) MONTHS BECAUSE HE HAS NOW MET ALL THE SAFETY-VALVE ELIGIBILITY REQUIREMENTS.

Movant reiterates those facts and arguments made in his moving papers and sets forth the following reply to the Government's response:

As this Court is now well aware, in a decision issued October 22, 2009 (after Movant's appeal and petition for rehearing was denied), the Ninth Circuit court of appeal accepted co-defendant Jackson's argument that there was <u>no evidence that she knew</u> or intended that pseudoephedrine was to be used to manufacture methamphetamine. (See Ex. "A" to Movant's Motion to Reduce Sentence – *U.S. v. Jackson*, 356 Fed.Appx. 4, 2009 WL 3389557 (C.A.9 (Cal.)).  This type of sea change event is exactly why there is a §2255 procedure.  The 9th Circuit has vindicated the defendant's testimony with the Jackson opinion after the Movant's direct appeal had been completed.

While the jury could find beyond a reasonable doubt that Jackson knew she was helping Mizyed handle pseudoephedrine, and that she was receiving a large amount of cash for it-thus that it was being used for some illicit activity-there is <u>no evidence</u>

- 9 -

1    from which the jury could reasonably infer that she knew of any connection between

2    pseudoephedrine and methamphetamine.  (Id.)  As such, the court remanded to the

3    district court with instructions to vacate the conviction and sentence on count one, and

4    to resentence on the remaining counts. (Id.)

5        The single reason why Jackson's conviction was vacated is concomitantly the

6    single reason why Movant was sentenced to 168 months instead of 51 months:

7    because Jackson did not know the pseudoephedrine was to be used to manufacture

8    methamphetamine because Movant Mizyed never told her. (i.e. because his testimony

9    was, as a matter of fact, truthful.)  How is it possible that (1) no evidence existed that

10   Jackson knew the pseudoephedrine was to be used to manufacture methamphetamine,

11   but simultaneously, (2) Movant did not provide truthful information through his

12   testimony at Jackson's trial?  It is not.  That is, if Movant was in fact not truthful, as

13   the Government continues to erroneously believe, then there would be at least some

14   evidence that Jackson knew the pseudoephedrine was to be used to manufacture

15   methamphetamine.  There was not.  That is, if Movant was in fact not truthful, as the

16   Government continues to erroneously believe, a jury could find beyond a reasonable

17   doubt that Jackson conspired to distribute pseudoephedrine having reasonable cause to

18   believe that it would be used to manufacture methamphetamine.  According to the

19   Ninth Circuit court of appeal, there was not.  It cannot logically go both ways.

20       The Government's written response to Movant's 2255 motion for reduction in

21   sentence is most critical.  The Government concedes that the "there was no evidence

22   concerning the relationship between pseudoephedrine and methamphetamine in co-

23   defendant Jackson's mind."  Well, how could there have been no evidence concerning

24   the relationship between pseudoephedrine and methamphetamine in co-defendant

25   Jackson's mind if, in fact, as the Government believed at sentencing, Movant was not

26   truthful?  That is, if Movant's testimony that he never told Jackson and other women

27   he was involved with dealing pseudoephedrine (RT 7/26/06: 88) was a lie (not

28

truthful), then how, <u>in co-defendant Jackson's mind</u>, could she <u>not</u> know of a relationship between pseudoephedrine and methamphetamine?  She could not.  That is, if Movant's testimony that he never told Jackson that the money he gave her was from drug dealing (RT 7/26/06: 89) was a lie (not truthful), then how, <u>in co-defendant Jackson's mind</u>, could she <u>not</u> know of a relationship between pseudoephedrine and methamphetamine?  She could not.  These questions are more than just hypothetical, they are the questions which cut the heart of the issue presented herein.

Therefore, the Government's contention that "this conclusion would have remained the same even if defendant's statements were deemed truthful[.]" (*Response* p. 9, lines 19-20) is utter legal nonsense and should steadfastly be rejected by the Court.  The Government's logic is legally flawed.  Even a gifted advocate like Government's counsel cannot escape the inherent flaw in the government's position.  It has always been Movant's contention he was telling the truth – always.  If you ask him today, he will tell you the same.  Instead of being rewarded for voluntarily putting himself and his girlfriend as risk, it appears he was punished for it because the truth did not help the Government's case at that time. (see footnote 9, *supra*.)

Furthermore, the Government misses its mark when it contends, "In other words, the court did not reverse the conviction because of anything the defendant said, but because there was insufficient evidence to make the connection that defendant [Jackson] knew or had reason to know the pseudoephedrine she possessed was going to be used to make methamphetamine." (*Response* p. 9, lines 20-25.)  Movant responds as follows - - if Movant was not truthful in the testimony he provided (the sole reason the safety valve was denied here[10]), then how could Jackson not know or have reason to know the pseudoephedrine she possessed was going to be used to make

---

[10]  The government argued at the sentencing hearing that defendant did not deserve a reduction for the safety valve because "based on his testimony under oath on direct, the government does not believe .... defendant ... provided ... truthful information." (RT 2/7/07: 106).

**REPLY MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS MOTION TO REDUCE SENTENCE PURSUANT TO 28 U.S.C.A. § 2255**

1  methamphetamine?  Stated differently, if Movant did tell Jackson he was involved

2  with dealing pseudoephedrine (RT 7/26/06: 88), then Jackson would have known the

3  pseudoephedrine she possessed was going to be used to make methamphetamine, and

4  accordingly, her conviction would not have been reversed.  She did not.  Yet again, if

5  Movant ever told Jackson that the money he gave her was from drug dealing (RT

6  7/26/06: 89), then Jackson would at least have reason to know that the

7  pseudoephedrine she possessed was going to be used to make methamphetamine.  She

8  did not.  The 9th Circuit's conclusion that <u>no evidence from which the jury could</u>

9  <u>reasonably infer that she knew</u> of any connection between pseudoephedrine and

10  methamphetamine is mutually exclusive to a finding during Movant's sentencing that

11  he was not truthful in his testimony at her trial.  That he did not have anything to offer

12  that the Government liked did not disqualify him from the safety valve.[11]

13      The Government's argument that "[i]f defendant's logic is to be followed, then

14  Jackson's money laundering conviction would have suffered from the same

15  fate[.]"(*Response* p. 10, lines 5-7) also completely misses the point.  The money

16  laundering conviction was sustainable because Jackson knew she was helping Mizyed

17  handle pseudoephedrine (not methamphetamine), and because she was receiving a

18  large amount of cash for it – and thus correspondingly knew, the money was being

19  used for some illicit activity. (see footnote 6, *supra*).  The money laundering

20  conviction is separate and independent and the truthfulness of Movant's testimony is

21  irrelevant in this respect. The Court should ignore the Government's attempt to pull

22  Movant's logic in a direction is does not go.

23      Moreover, Movant objects to the Government's false contention that

24  "Defendant concedes his untruthfulness. . . ." (*Response* p. 10, lines 18-19.)  This is

25      ───────────────

26      [11] See e.g. Arrington, 73 F.3d at 147-48 (holding that 18 U.S.C. § 3553 was to

27  "benefit defendants who wished to cooperate with the government (and in fact did
everything they could to cooperate) but simply had no new or useful information to
provide").

28

**REPLY MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS MOTION TO REDUCE
SENTENCE PURSUANT TO 28 U.S.C.A. § 2255**

false.  Movant cites to *United States v. Jeffers* 329 F.3d 94, 99 (2d Cir. 2003)) *passim* in his 2255 motion to reduce his sentence.  *Jeffers* stands for the simple proposition that even a defendant's perjury will not disqualify him from the safety-valve reduction if he "comes clean" before sentencing.  Jeffers was cited for juxtaposition to show how Movant Mizyed's case is much less drastic than was *Jeffers'* case (who had admitted he committed perjury.)   No such admission was made here; the point of the *Jeffers* case, as explained in the moving papers, is that the purpose of the fifth requirement for safety-valve eligibility (§ 3553(f)(5) - described as the "tell all that you can tell" requirement) is to reward full disclosure, even if, as with *Jeffers*, the defendant lies under oath.  The *Jeffers* case shows that the courts are willing to reward honesty when the requirements of 18 U.S.C. § 3553 have been met, even in the drastic situation where a defendant, like *Jeffers*, has committed perjury.  The Government misreads the point of the *Jeffers* case. (*Response* p. 11, lines 7-10.)  Regardless, *Jeffers* is cited for only persuasive authority.

## VII.   MOVANT WAS RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL AT THE SENTENCING LEVEL.

Movant was rendered ineffective assistance of counsel at the sentencing level when no request for an evidentiary hearing was made and when counsel failed to pursue an evidentiary hearing to assess the credibility of the Government's proffered evidence.

When facts important to a sentencing determination are genuinely in dispute, an evidentiary hearing may be necessary to resolve any factual discrepancies. U.S.S.G. 6A1.3(a); *U.S. v. Garcia*, 954 F.2d 12, 19 (1st Cir. 1992).  Further, while a district court may rely upon evidence at sentencing "without regard to its admissibility under the rules of evidence applicable at trial, before the court can consider the government's evidence it must make an independent determination regarding the evidence's reliability" and credibility.  *U.S. v. Valencia-Lucena*, 925 F.2d 506, 515 (1st Cir.

1991); *Jimenez-Martinez*, 83 F.3d at 494.  This assessment may require the court to conduct an evidentiary hearing.  *Id.*

Had an evidentiary hearing been held in this case, Movant could both have testified and would have been subject to cross-examination.  Moreover, co-defendant Jackson could have been called to the stand and questioned regarding the truthfulness or untruthfulness of Movant's testimony in her trial.  No such hearing was held and neither side brought into the record any statement or affidavits of anyone.  While it may be doubted that the Movant was truthful, the court cannot say positively that he was not entirely truthful.

In the instant case, to deny the Movant the benefit of the safety valve, the Government and the Court needed to be sure that Movant was not being truthful.  As this is a factual issue that was critical to the application of the safety valve, the issue should have been subject to an evidentiary hearing pre-sentencing.  Counsel was therefore constitutionally ineffective.  Movant is also willing to have an evidentiary hearing before this Court.

During the sentencing hearing, Movant's counsel disputed the Government's assertion, yet never requested an evidentiary hearing to resolve this obvious factual dispute, nor objected to the inadequacy of the Government's proof.  It should be reminded that his counsel was substituted out of the case because he was completely incompetent.  His retained trial counsel became appointed counsel after he sucked the defendant dry for all of his money.  He then was terminated by the defendant when he discovered that he failed miserably at conducting any evidentiary hearing.  This gross incompetence on behalf of trial counsel combined with the 9th Circuit's affirmation of the defendant's trial testimony created a dramatic change in the landscape of this case.

Furthermore, trial counsel failed to make any meaningful effort to require the Government to produce either live witnesses or sworn affidavits to support its allegation that Movant did not testify truthfully.  When these facts are juxtaposed

- 14 -

1  upon the applicable evidentiary burden[12] the legal conclusion that failing to do so was

2  unreasonable and inadequate naturally follows.  This is true especially in light of the

3  fact that this unsupported allegation formed the Court's <u>only</u> basis for denying the

4  Movant the benefit of the safety valve.  Were there other issues, perhaps the question

5  might be a closer call.  Not so here. Movant was clearly substantially prejudiced by

6  counsel's unreasonable omissions because the Court sentenced Movant without

7  having adequate evidence before it.   It was clear that his trial counsel's knowledge of

8  the sentencing guidelines and his inability to comprehend criminal procedure all

9  worked to detriment and prejudice to Mr. Mizyed, the Movant.

10       As discussed in the moving papers and above, the only evidence that the

11  Government presented to the Court at sentencing was <u>their opinion</u> that Movant was

12  not being truthful.  The Court could not conceivably have been able to reassess the

13  credibility or reliability of Mizyed's testimony without the benefit of the adversarial

14  process at an evidentiary hearing.  *Jimenez-Martinez*, 83 F.3d at 494.  Therefore,

15  counsel's failure to request such a hearing, even assuming it would not have been a

16  "show stopper", was unreasonable and prejudiced the Movant because the

17  Government's false and biased opinion formed the sole basis of the Court's sentencing

18  determination.

19  **VIII.  MOVANT WAS RENDERED INEFFECTIVE
ASSISTANCE OF COUNSEL AT THE APPEAL**

20  **LEVEL WHEN COUNSEL FAILED TO RAISE THE**

21  **FOREGOING STATUTORY ISSUE PRESENTED.**

22       Failing to raise the statutory issue presented herein on appeal was

23  constitutionally inadequate because it falls below the appropriate objective standard of

24  reasonableness that applies to questions of adequate counsel.  It is a real shame that

25  the Movant has had bad luck with his trial counsel who fleeced him then had him

26       [12] See *Ajugivo*, 82 F.3d at 929 (9th Cir. 1996) (the Ninth Circuit has placed the

27  burden on appellant to prove by a preponderance of evidence that he should receive a

28  sentence reduction under the safety valve provisions of § 3553(f).)

- 15 -

plead guilty and his overloaded appointed appellate counsel who never raised this important issue.

## IX.    CONCLUSION

An absolute and rigid confinement of 2255's remedial aims is not exacted by its terms.  They give room for enlisting its aid in unforeseeable exigencies.  So to indulge its use here will not expose the statute to abuse, but it will honor its intendment as an instrument of rescue from injustice.  This exceptional case comes under its aegis.

Based on the foregoing arguments and authorities, the moving papers, and the record in this case, this Honorable Court is respectfully urged to resentence Movant in accordance with the law.  Respectfully, sentence must be vacated and/or remanded for re-sentencing applying the safety valve provision within the meaning of U.S.S.G. § 5C1.2(5) and 18 U.S.C. § 3553(f)(5).  Movant requests any and all relief this Court otherwise deems just and proper. "*It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired*." *Bowen v. Johnston*, 306 U.S. 19, 26, 59 S.Ct. 442, 83 L.Ed. 455 (1939).

DATED: January 7, 2011          Respectfully Submitted,
                                Law Offices of Ronald Richards & Associates, A.P.C.


                                    */s/ Ronald Richards, Esq.*
                                By:_____
                                RONALD RICHARDS, Esq., Attorneys for
                                Defendant/Movant, GALEB MIZYED

**REPLY MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS MOTION TO REDUCE SENTENCE PURSUANT TO 28 U.S.C.A. § 2255**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**REPLY MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS MOTION TO REDUCE SENTENCE PURSUANT TO 28 U.S.C.A. § 2255**